BROTHERS et al., Appellants,

v.

CITY OF YOUNGSTOWN, Appellee.

[Cite as *Brothers v. Youngstown* (1996), 115 Ohio App.3d 498.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 94 C.A. 202.

Decided Nov. 4, 1996.

500

*Richard Sternberg* and *Dianne R. Newman,* for appellants.

*David C. Comstock, Sr.* and *David C. Comstock, Jr.,* for appellee.

---

JOSEPH E. O'NEILL, Presiding Judge.

This timely appeal arises out of a decision by the trial court directing a verdict in favor of defendant-appellee after the close of plaintiffs-appellants' case to a jury.

Appellants owned six acres of property on North Meridian Road within the city of Youngstown, Ohio, upon which there were three buildings. These buildings constituted the Sentco Plant. Building No. One was built in 1978 and was a block structure; Building No. Two was built in 1980 and contained a first floor and basement and was immediately adjacent to Building No. One. The last building, Building No. Three, was built between 1982 and 1983 and was connected to Building No. Two.

At 4:22 a.m., on January 15, 1989, a passerby reported a fire at the Sentco Plant. Within minutes, the Youngstown Fire Department responded with eight pumper trucks, two aerial ladders, a rescue truck and three chiefs. Due to a lack of water volume in the existing water system, the fire department's efforts to fight the blaze were hindered.

Fire Chief Kernan, of the Youngstown Fire Department, requested additional water pressure but was told by Eugene Leeson, Chief Engineer of the Youngstown Water Department, that there was no more water available. Chief Kernan

testified that there was not enough water to fight the fire but acknowledged that the destroyed buildings could not have been saved anyway because the fire was too far advanced. Buildings Nos. Two and Three were destroyed by the fire and Building No. One was damaged.

On December 18, 1990, plaintiffs-appellants filed a complaint in the trial court against the city of Youngstown, its Department of Public Service and its Water Department. The complaint alleged that defendants, acting in their proprietary function, negligently failed to advise appellants that there was insufficient water pressure to extinguish a fire at the plant and that, as a result of such negligence, the plant burned. On March 8, 1991, appellees filed an answer denying that they were negligent.

A jury trial commenced on October 19, 1994 and continued with a short break until October 28, 1994. Thirteen witnesses testified on behalf of appellants. One was David Crandell, Chief of Akron's Water Department, who was presented by way of video deposition. Crandell testified that he was the manager of Public Utilities for Akron, Ohio. Crandell also testified that, in his opinion, due care was not taken by the Youngstown Water Department concerning the results of flow tests and that there was a lack of communication between the water department, fire department and building department. Crandell further testified that Youngstown's procedures fell below the standard of care between a municipal water system and a fire department. The trial court excluded much of Crandell's opinion testimony, finding that he was not an expert in certain areas.

The appellants also presented another expert at trial, Julian Suso, but the trial court refused to allow him to render an expert opinion regarding responsibility of a city's water department to the public in maintaining an obstruction-free water system.

At the close of appellant's case, appellees made a motion for a directed verdict. In this motion, the appellees admitted that Youngstown had a duty to maintain its water lines and that it had breached that duty. The appellees further argued, however, that the plaintiffs-appellants had failed to prove proximate cause by testimony, expert or otherwise. The trial court granted the motion for a directed verdict and filed findings of fact and conclusions of law.

A timely notice of appeal was filed directed to this final judgment of the trial court.

As a part of the motion for directed verdict, counsel for the defendant-appellee stated to the trial judge:

"However, again, for the purposes of this motion only, the Court may assume that an obstruction existed in the 8–inch line in front of North Meridian Road to the extent that only 300 gallons per minute was available, if the obstruction

existed for a period of seven years and existed on the evening of the fire, and that the City was negligent for its failure to correct the restriction to permit a free flow of water for fire flow purposes of 2,000 gallons per minute, which was the recommended amount at that lot. So for the purposes of this motion, the City will concede both the issues of duty and negligence."

In his findings of determination of law, the trial judge made specific reference to this admission of negligence and failure of duty on the part of Youngstown.

The appellants' first assignment of error contends that the trial court erred when, in the presentation of plaintiffs-appellants' case in chief, the court excluded videotaped expert opinion testimony and further refused to consider similar proffered live testimony of a second expert in municipal government as to the standard of care expected of a city water department in supplying water to its fire hydrants.

Initially, the appellants complain of the court's ruling relative to portions of the videotaped testimony of David Crandell. Crandell was called by the plaintiffs-appellants as an expert witness qualified to render various opinions about procedure and practices of a city water department. After testifying as to his investigation of the Youngstown City Water Department and, specifically, what occurred at the time of the fire, Crandell was asked to render an opinion. He rendered his opinion, and there was an objection. The objection, on the part of the defendant-appellee, was sustained by the trial court. In his opinion, Crandell stated as follows:

"My opinion is that there has not been a due care with the various parties in notifying the various departments, intercommunication with the various departments to notify them of any results that they may have found and so that there is a lack, it appears to be a lack of communication between the water department, fire department, and the building department. It appears like there is some knowledge that was not transmitted timely to them, and it also appears that the record keeping is not adequately available, based on testimony of several parties where they had to dig through files to get information out. It appears like it was not readily available and therefore was not transmitted to anyone that may come in asking that information, and there's a question of whether it was ever transmitted to the fire department.

" * * *

"Q Is it your opinion then that Youngstown's procedures and practices fell below the standard of care for a municipal water supplier?

"A In my opinion, yes, there was a below, it was below the standard of reasonable care one would exercise between a municipal water system and the fire and/or building department."

At another point, the trial judge excluded an answer tendered by this expert:

"Q  If a water department isn't providing adequate water for fire fighting purposes, do they have a duty to inform somebody of that?

"* * *

"A  They have a responsibility in my opinion that they should inform the other party that there is any kind of obstruction in there so that the other party can make knowledgeable decisions on actions they may want to take, be it a building, be it laying out an alternate plan for fire fighting, be it standard for sprinkler systems.

"Q  When you're speaking of sprinkler systems, the American Waterworks Association puts out a publication talking about water supply requirements and their M–3 manual.  Are you familiar with that manual?

"A  Yes, I am.

"Q  In that manual, it indicates that government in providing water, should provide water sufficient to provide for automatic sprinklers in addition to any other demands that are put upon the system.  Is this consistent with your understanding of a water system?

"A  This is consistent to a degree.  It depends on the relationship that the water has with the political boundaries.  If there is a relationship that they shall supply flows for fire fighting needs and is recognized by the community as a whole, that is the purpose of the water, yes there is.  There are some that are only supplying for domestic purposes, singularly.  This is especially noticeable out in some of the western areas where you get in agriculture areas where they're just supplying water for drinking purposes, and there may be substandardized lines purposefully put in that way.  You find a lot in agricultural communities, or smaller communities."

After some conversation relative to the reduced water flow in the area, the following colloquy took place between counsel for the plaintiff-appellant and the expert witness, and it was again stricken by the trial judge:

Q  What should you do when you see results like this?

"A  That's a red flag.  That tells me that there should be communication between the fire department, between the water department and the fire department and/or the building department to raise the red flag that there is a deficiency there that you should know about and that barring the budgetary concerns of the water department, and I say barring that because everybody has budgetary concerns, is to lay out a plan for corrective action.  At a minimum, there should be some kind of communication between the water department and

the fire department of that, and the building department of that known deficiency.

" * * *

"Q In the event that the city does not have adequate funding to do what you have suggested, what alternative measures should be taken by the city or particularly by the water department?

" * * *

"Q Having learned of this obstruction in the line?

" * * *

"A. The basic, if there is restrictions on budget to make corrective action, then it comes back to information. Let the other parties within the city know it, of the restriction, and let them make the judgment call as far as building, warning people, and specifically, laying out a plan for the fire department that they can respond under these kind of circumstances."

■ Each one of these opinions rendered by this expert deals with the lack of care on the part of Youngstown and imputes negligence to Youngstown. Even though these opinions were struck by the trial judge, as we have previously noted in the motion for directed verdict, counsel for Youngstown admitted that the city was negligent, and the trial judge very specifically found that the city was negligent. Thus, the ruling of the trial judge relative to these expert opinions on lack of care simply did not prevent or interfere with the final judgment of the trial judge.

Secondarily, under this assignment of error, the plaintiff-appellant also takes issue with exclusion of the testimony of Julian Suso. It is obvious from the voir dire of Suso and his proffered testimony that any opinion that he might have rendered to the jury had to do with negligence on the part of the defendant-appellee. Again, in view of the fact that in the motion for a directed verdict the city admitted negligence and a lack of due care, the rulings as to Suso's opinions had no prejudicial effect on the outcome of the case.

Accordingly, this first assignment of error is found to be without merit.

■ The second assignment of error contends that the trial court erred to the prejudice of the appellants when it excluded evidence or ignored evidence that would have established that the Youngstown Water Department knowingly maintained a nuisance within its water system.

This assignment of error deals with the testimony and the stricken testimony of the expert witness Crandell. Again, as under the first assignment of error, this assignment of error argues negligence on the part of the city in failure of a

specific duty. As we stated in disposition of assignment of error number one, in its motion for directed verdict, the city very specifically stipulated and agreed that it was negligent and that it had failed to exercise the required care.

Accordingly, this second assignment of error is found to be without merit for the reason that the issues raised had no prejudicial effect as to the judgment granted by the trial court.

■ The third assignment of error states that the trial court committed prejudicial error when it granted the defendant-appellee's motion for a directed verdict on the ground that "the nature of this case clearly requires expert testimony of proximate causation."

As a part of his judgment entry, the trial judge stated:

"In the case before this court, there has been no expert testimony on the issue of proximate causation. In fact, there has been no testimony, expert or otherwise, which has stated that *any* amount of water would have diminished or eliminated the plaintiffs' damages."

Richard Andrews, a public adjuster, was called by the plaintiffs as an expert in the field of representing policyholders in their catastrophe claims against insurance companies. Andrews had investigated the fire at the Sentco Plant, and it was his opinion that the total damage to the buildings involved was $480,083.88.

Wanda L. Brothers, the wife of Roland Brothers and basically the bookkeeper for the Sentco Company, testified relative to the loss that was experienced as the result of the fire. It was her opinion, based upon her observations, investigation and calculation, that the company suffered a loss of $1,377.388.22.

However, there was no evidence as to what the loss to the Sentco Plant would have been had the water line servicing the fire hydrant not been blocked.

Terry Rakocy, who had been chief engineer of the Youngstown Water Department at one time, testified relative to tests that were conducted on the water line in front of the Sentco Plant building at the time that he was chief engineer. Rakocy testified that these tests revealed that the fire hydrant involved in this case had sufficient pressure to pass only three hundred gallons of water per minute. He further testified that under normal circumstances, without blockage in the line, the hydrant would have furnished thirteen hundred gallons per minute.

The question, which was unanswered in this case, was what loss the plaintiffs-appellants would have suffered had the fire hydrant been normally functioning?

■ It is well settled that, in order for a person to be entitled to recover any damages for a claimed negligent injury, the act complained of must be the direct and proximate cause of the injury. The damages recoverable are limited to those

injuries or losses which are the natural, proximate and probable consequences of the wrong complained of. 30 Ohio Jurisprudence 3d 22 (1981), Damages, Section 12. In the instant case, the damages recoverable by the plaintiffs-appellants would be those damages which occurred as a result of the negligent-reduced water flow in the fire suppression lines. In order to arrive at those damages, it was necessary that the plaintiffs-appellants, by expert testimony, establish what the damages would have been had there been a normal flow in the water lines of thirteen hundred gallons per minute. These estimated damages would then be deducted from the plaintiffs-appellants' total damages, and the result would have been the damages that were proximately caused by the negligent maintenance of the water line.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

GENE DONOFRIO, J., concurs.

COX, J., concurs separately.

COX, Judge, concurring.

I hereby concur in the opinion rendered by the majority in this case. However, I do so only as a result of appellants' total failure to provide *any* evidence on the issue of proximate cause and not, as the majority opines under the third assignment of error, because appellants failed to present expert testimony with regard to that issue.